FILED

2013 Feb-28  PM 12:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| PATRICK AMASON and ENGER C. McCONNELL, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NUMBER 7:09-CV-2117 |
| KANGAROO EXPRESS; THE PANTRY, INC., | ) ) ) | |
| Defendants. | ) | |

## THE PANTRY'S MOTION FOR
## CERTIFICATION OF INTERLOCUTORY APPEAL

The Court has indicated that it will deny The Pantry's Renewed Motion to Dismiss For Lack of Standing (Doc. # 80) (the "Motion") in a forthcoming Order and Memorandum Opinion.[1]  In its briefs supporting the Motion (Doc. ## 61, 67, 85, 91 & 94), and at oral argument, The Pantry demonstrated that Plaintiffs lack the necessary injury-in-fact to support Article III standing, and that Plaintiffs' allegations of having suffered a FACTA violation and, thereby, being exposed to "an increased risk of identity theft and credit card and/or debit card fraud" (Doc. # 24 at ¶ 34) are insufficient to support a finding of Article III standing.  An immediate appeal would be appropriate because the standing issue "involves a controlling question of law as to which there is substantial ground for difference of opinion," 28 U.S.C. § 1292(b), and resolution of the standing issue in The Pantry's favor would "materially advance the ultimate termination of the litigation," *id.*, and "avoid protracted and expensive litigation." *See Milbert v. Bison Labs., Inc.*, 260 F.2d 431, 432-34 (3d Cir. 1958) (en banc) (Maris, J., who

---

[1]     The Pantry reserves all rights regarding the Court's forthcoming ruling.  The Pantry does not waive any of its arguments in the Motion.  Instead, The Pantry specifically contends that the Motion should be granted.  The arguments that support the Motion likewise support interlocutory appellate review.

was one of two federal judges who testified before Congress on the legislation) (tracing the legislative history of § 1292(b) and observing its application would be especially appropriate in "cases where a long trial would be necessary for the determination of liability or damages upon a decision overruling a defense going to the right to maintain the action").

The Pantry offers the following in support of this motion.

1.      The Court's Order denying the Motion "involves a controlling question of law." Standing is jurisdictional; thus the resolution of the question may be dispositive of the entire case. *See Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 932 (11th Cir. 2013) (addressing standing as a "threshold jurisdictional question"); MOORE'S FEDERAL PRACTICE, 3rd Ed., § 203.31[2] ("Controlling questions of law that fall within this category of dispositive issues include … questions as to … standing to maintain the action."). Eleventh Circuit precedent establishes that § 1292(b) interlocutory appeal is an appropriate vehicle for review of such questions. *See Arnold v. Martin*, 449 F.3d 1338, 1340-42 (11th Cir. 2006) (reviewing plaintiff's standing on interlocutory appeal and reversing denial of motion to dismiss); *Harris v. Evans*, 20 F.3d 1118, 1120 (11th Cir. 1994) (reviewing plaintiff's standing on interlocutory appeal and reversing district court's denial of summary judgment); *E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 980 (11th Cir. 1990) (same). The question of Plaintiffs' standing is a "pure, controlling question of law" that does not require this Court, or the Eleventh Circuit, to resolve a factual dispute. *See McFarin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir 2004) (explaining that § 1292(b) review should not require the appellate court to sift through the factual record in order to apply the law to a particular factual scenario). The parties do not dispute whether Plaintiffs have suffered any out-of-pocket damages, identity theft, or credit card

fraud – they have not.   They dispute whether suffering a statutory violation or an alleged

"increased risk of identity theft or credit card fraud" imbue Plaintiffs with Article III standing.

2.      The issue presented by the Motion is, at a minimum, one "as to which there is

substantial ground for difference of opinion."   The Supreme Court considered a materially

identical question so close that it granted *certiorari* last term in *First American Financial Corp.*

*v. Edwards* and heard oral argument before ultimately dismissing the writ as improvidently

granted.     This Court, at oral argument on the Motion, noted the difficult-to-reconcile

pronouncements on this issue in the Supreme Court's standing cases.   *Compare, e.g. Raines v.*

*Byrd*, 521 U.S. 811, 820 n.3 (1997) ("It is settled that Congress cannot erase Article III's

standing requirement by statutorily granting the right to sue to a plaintiff who would not

otherwise have standing.") *with Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("The actual or

threatened injury required by Art. III may exist solely by virtue of 'statutes creating legal rights,

the invasion of which creates standing …..'") (quoting *Linda R.S. v. Richard D.*, 410 U.S. 614,

617 n.3 (1973)).[2]

3.      Moreover, the Court has previously noted that while "[t]here is disagreement

among the Circuits over what the Supreme Court has instructed regarding whether a statutory

violation without actual harm may confer Article III standing, [and] the majority view appears to

consider a mere statutory violation as sufficient[,] …. [t]he Eleventh Circuit appears require an

injury independent of a statutory violation to confer Article III standing."  (Doc. # 75 at 5 (citing

*Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 763 (3rd Cir. 2009); *U.S. ex rel. Kreindler &*

---

[2]      The Supreme Court has explained that this statement in *Linda R.S.* acknowledged "Congress' elevating to
the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Lujan v.*
*Defenders of Wildlife*, 504 U.S. 555, 578 (1992). *Linda R.S.*, and the cases it cited in support of this statement, do
not stand for the proposition that purely *de jure* injuries – such as are presented in this case – are always sufficient to
confer standing.

*Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1154 (2nd Cir. 1993); and *United States v. Weiss*, 467 F.3d 1300, 1310-1311 (11th Cir. 2006))).   The Eleventh Circuit analyzes constitutional standing separately from statutory standing, evidence that the two inquiries are not conflated and suggesting that a mere statutory violation is not enough to satisfy Article III.  *See U.S. v. $688,670.42*, No. 11-10886, 2011 WL 6759574, at *2 (11th Cir. Dec. 23, 2011); *Baloco ex rel. Tapia v. Drummond Co., Inc.*, 640 F.2d 1338, 1343 (11th Cir. 2011); *see also Charvat v First Nat'l Bank of Wahoo*, 2012 WL 2016184, at *3 (D. Neb. June 4, 2012) ("The Constitution requires more than mere injury in *law*.  A plaintiff must allege an injury in *fact* that was caused by [a violation of the Electronic Funds Transfer Act].") (emphasis in original).  *But cf., e.g., Korman v. Walking Co.*, 503 F. Supp. 2d 755, 759 (E.D. Pa. 2007) (finding mere statutory violation sufficient injury to confer standing); *Hammer v. JP's Sw. Foods, LLC*, 739 F. Supp. 2d 1155, 1162 (W.D. Mo. 2010) (same).

4.       An additional threshold legal issue justifying immediate appellate review is whether Plaintiffs' alleged "increased risk of identity theft and credit card and/or debit card fraud" is a sufficiently "imminent" or "certainly impending" injury-in-fact to confer Article III standing.[3]  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 565 n.2 (1992) (noting that the "imminence requirement" exists "to ensure that the alleged injury is not too speculative for Article III purposes – that the injury is *certainly* impending") (internal quotation marks omitted; emphasis in original); *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) (reiterating that "[a]llegations of possible future injury do not satisfy the requirements of Art. III.  A threatened

---

[3]       Plaintiffs' deposition testimony, their repeated statements in briefs on the issue, and the two complaints in this matter make clear Plaintiffs have suffered no actual damages and rely entirely on the alleged "increased risk." The Pantry has submitted evidence before the Court that The Pantry's conduct has not subjected Plaintiffs to any increased risk of identity theft or credit card fraud, and Plaintiffs long ago cancelled the cards they used in their transactions at The Pantry.

injury must be certainly impending to constitute injury-in-fact."); *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (holding plaintiff lacked standing where the future harm he sought to enjoin involved the police again arresting him and using a controversial chokehold technique). Whether the risk of future injury, here the threat of future identity theft or fraudulent transactions, satisfies the Constitution's injury-in-fact requirement is an open question in the Eleventh Circuit. *See Resnick v. Avmed, Inc.*, 693 F.3d 1317, 1323 n.1 (11th Cir. 2012) (declining to address the question in a case arising under Florida law and involving allegations of actual identity theft as a result of a data breach); *Bouldry v. C.R. Bard, Inc.*, No. 12-80951-CIV-Rosenbaum, 2012 WL 6599829, at *2 (S.D. Fla. Dec. 18, 2012) (noting, in a products liability case, that "[t]he Eleventh Circuit has not addressed whether risk of future injury satisfies the Constitution's injury-in-fact requirement."). Other Circuits are split on the issue, albeit in non-FACTA data-breach cases. *Compare Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1142-43 (9th Cir. 2010) (finding allegations of threatened identity theft sufficient to establish an injury-in-fact) *and Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 634 (7th Cir. 2007) (same) *with Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3rd Cir. 2011) (holding plaintiffs' allegation of possible future identity theft and unauthorized transactions from a data breach too "attenuated" to support standing "because it is dependent on entirely speculative, future actions of an unknown third-party").

5.    Indeed, just this week the United States Supreme Court emphasized that the risk of future injury does not confer Article III standing, holding that the plaintiffs lacked standing and reversing the Court of Appeals. *See Clapper v. Amnesty Int'l USA*, --- S.Ct. ----, 2013 WL 673253, at *15 (Feb. 26, 2013) (slip copy). The plaintiffs in *Clapper* challenged a surveillance authorization provision in the Foreign Intelligence Surveillance Act ("FISA"). *Id.* at *3. They

argued that injury-in-fact existed due to "a reasonable likelihood that their communications will be acquired at some point in the future" or, alternatively, because the risk of FISA-authorized surveillance had already "forced them to take costly and burdensome measures to protect the confidentiality of their international communications." *Id.* The Court rejected these arguments, holding that the "theory of *future* injury is too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending.'" *Id.* (quoting *Whitmore*) (emphasis in original). The Court also held that the plaintiffs could not "manufacture standing" by incurring costs to allay their subjective fear of surveillance. *Id.* at *11–12.

6.      The substantial ground for difference of opinion on this issue is particularly highlighted because Congress's last word on the subject was a unanimous expression of intent that FACTA be used to protect "consumers suffering from any ***actual harm*** to their credit or identity … while simultaneously limiting abusive lawsuits that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers." Pub. L. 110-241 § 2, 122 Stat. 1565, 1565 (2008) (emphasis added); *see also* Congressional Floor Statements cited in Doc. # 94 at 2.

7.      Finally, an immediate appeal "may materially advance the ultimate termination of the litigation." If Plaintiffs lack standing, the litigation will end, saving the parties (and possibly third parties) and the Court months of time-consuming and expensive work. Certainly it makes little sense to proceed to class certification, and if a class is certified, to put Plaintiffs to the protracted work of attempting to identify putative class members via hundreds or thousands of third-party subpoenas (*see* Doc. ## 29 at 40-41, 48 & 65), and, if the class can be identified, to tackle the work of trying the case on a classwide basis, if the Eleventh Circuit ultimately determines that the Court lacks subject matter jurisdiction over the whole affair. If, on the other

hand, the Eleventh Circuit settles the Article III standing question in Plaintiffs' favor, the case can proceed without this jurisdictional cloud hovering over it.

8.      For these reasons, The Pantry asks the Court to certify its Order denying the Motion for interlocutory appeal under 28 U.S.C. § 1292(b).

Respectfully submitted this 28th day of February, 2013.

BRADLEY ARANT BOULT CUMMINGS LLP

By ____/s/ Dylan C. Black_____
      Dylan C. Black (ASB-6595-K72D)
      Keith S. Anderson (ASB-3747-H66A)
      1819 Fifth Avenue North
      Birmingham, AL 35203
      dblack@babc.com
      kanderson@babc.com
      (205) 521-8000; (205) 521-8800 (Fax)

Attorneys for Defendant The Pantry, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2013, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Steven L. Nicholas
Cunningham Bounds LLC
1601 Dauphin Street
Mobile, AL 36604
sln@cunninghambounds.com

Brian E. Comer
Tobias & Comer
1203 Dauphin Street
Mobile, Alabama 36604
bryan@tobiascomer.com

William F. Green
Fleenor Green & McKinney LLP
204 Marina Drive Ste. 200
Tuscaloosa, AL 35406
wgreen@fleenorgreen.com

Dustin J. Fowler
Buntin Etheredge & Dowling LLC
Post Office Box 1193
Dothan, AL  36302
dustinjfowler@hotmail.com

/s/ Dylan C. Black
OF COUNSEL