# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| **PATRICK AMASON, et al.,** } | |
| } | |
| Plaintiffs, } | |
| } | |
| v. } | Case No.: 7:09-CV-2117-RDP |
| } | |
| **KANGAROO EXPRESS, et al.,** } | |
| } | |
| Defendants. } | |

## MEMORANDUM OPINION

In his Farewell Address, George Washington warned of the threat of "a real despotism" that could spring from the "love of power, and proneness to abuse it, which predominates in the human heart."[1]  Human experience teaches that the natural temptation of man is to expand the powers granted to him.  This matter is before the court on Defendants' Renewed Motion to Dismiss for Lack of Standing.[2]  (Doc. # 80).  Defendants argue that finding Plaintiffs to have standing to bring this case would require the court to expand its jurisdiction beyond the boundaries delineated by the Constitution.  (*See* Doc. #61 at 1).  However, in order to reach that conclusion, Defendants invite the court to play a game of legislative reconstruction.  (Doc. #67 at 3).  To engage in such an exercise, however, would amount to an usurpation by this court of powers rightfully granted to Congress.  The court declines to do so.

---

[1] George Washington, Farewell Address (1796).

[2] While the Motion to Dismiss was formally raised by only one of the Defendants, The Pantry, because both Defendants are affected by this litigation and are both represented by the same attorneys who challenge whether Plaintiffs have standing, the court shall refer to both Defendants throughout this order.

I.     BACKGROUND

Plaintiffs assert that Defendants willfully violated § 1681c(g) of the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681, *et seq.*, by printing more than the last five digits of Plaintiffs' credit and debit card numbers on receipts provided to them when transacting business with Defendants.  (Doc. # 24 ¶¶ 3-4).  In accordance with 15 U.S.C. § 1681n(a)(1)-(3), Plaintiffs seek statutory "damages of not less than $100 and not more than $1,000" for each violation, punitive damages, and the costs of this action plus reasonable attorney's fees.  (Doc. # 24 ¶¶ 35-37).  Plaintiffs also seek an injunction to enjoin Defendants from continuing to violate FACTA.  (Doc. # 24 at 11).  Defendants move for this case to be dismissed under Rule 12(b)(1) because Plaintiffs admit that they have not suffered any actual damages, which Defendants argue amounts to a lack of injury in fact for the purposes of Article III standing.  (Doc. # 61 at 1).  Plaintiffs contend, however, that they have suffered an "injury in fact" for standing purposes.  (Doc. # 62 at 4-5).  Because Congress created rights under FACTA, Plaintiffs assert that Defendants' violation of these rights is itself the injury in fact and therefore proof of actual damages is not required.  (*Id.*).  Defendants counter with two arguments: (1) statutory causes of action cannot confer standing, but (2) even if statutory rights could confer standing, Congress did not intend for FACTA to grant rights to consumers who have not suffered actual damages.  (Doc. # 67 at 3).

II.    STANDARD OF REVIEW

Federal courts have limited subject matter jurisdiction.  13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3522 (2d ed. 1984 & Supp. 2008). A claim can proceed in federal court only if the plaintiff has standing.  *Valley Forge Christian Coll. v. Am. United for Separation of Church & State*, 454 U.S. 464, 471 (1982).  "Because standing is

jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Stalley ex rel. U.S. v. Orlando Regional Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (citing *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991)).

Challenges to subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure exist in two substantially different forms: facial attacks and factual attacks. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (abrogated on other grounds by *Mohamad v. Palestinian Authority*, 565 U.S. __, 132 S.Ct. 1702, 1706 n.2 (2012)). When presented with a facial attack on the complaint, the court determines whether the complaint has sufficiently alleged subject-matter jurisdiction. *Sinaltrainal*, 578 F.3d at 1260. In evaluating this motion, the court proceeds as if it were presented with a Rule 12(b)(6) motion; that is, it views the complaint in the light most favorable to the plaintiff and accepts all well-pled facts alleged in the complaint as true. *Id.*

A factual attack, on the other hand, challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.*, citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990). Because a factual challenge concerns the very authority of a court to hear a case, no presumption of truthfulness attaches to a plaintiff's allegations. *Lawrence*, 919 F.2d at 1529. When the court evaluates a factual attack in which a defendant's attack also implicates an element of the cause of action, "the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Id.*, citing *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981). The motion to dismiss currently before the court is a

factual attack challenging the existence of standing (which is required for this court to exercise subject matter jurisdiction over this case).

## III. DISCUSSION

Because standing is a jurisdictional question and jurisdiction must be established before the court may consider the merits of a case, the court must first address the question of whether Plaintiffs have standing to pursue their claims in this court. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 95-95 (1998).

### A. Standing

Standing is a threshold inquiry, involving both constitutional and prudential considerations, designed to determine whether a litigant meets certain requirements which *must* be satisfied before a federal court may even hear the merits of the case. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 471 (1982). Prudential standing "is satisfied when the injury asserted by a plaintiff arguably falls within the zone of interests to be protected or regulated by the statute in question."[3] *Federal Election Commission v. Akins*, 524 U.S. 11, 20 (1998); *see also Bennett v. Spear*, 520 U.S. 154, 163-64 (1997) ("Congress legislates against the background of our prudential standing doctrine, which applies unless it is expressly negated."); *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 210-211 (1972) (finding that standing was expanded to the full extent permitted under Article III by the Civil Rights Act of 1968). In the instant case, Plaintiffs are consumers who have conducted business with Defendants, and Defendants

---

[3] The Supreme Court has articulated three prudential requirements for assessing standing, *Allen v. Wright*, 468 U.S. 737, 751 (1984). Defendants have not argued that any of these requirements weigh against standing; however, because standing is a jurisdictional question and the court must assure itself that it has jurisdiction over this case, the court must examined whether the plaintiffs satisfy both constitutional and prudential standing requirements. *See Friends of the Earth v. Laidlaw Environmental Services*, 528 U.S. 167, 180 (2000).

are merchants who are each regulated by FACTA. Defendants, as entities that "accept[] credit cards or debit cards for the transaction of business" are required under FACTA to not "print more than the last 5 digits of the card number . . . upon any receipt provided to the cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g). Plaintiffs allege that Defendants willfully violated FACTA by printing more than the last five digits of the card number on receipts provided to them while transacting business. (Doc. #24 at 2). Because the statute specifically regulates the type of transaction that occurred between Plaintiffs and Defendants and the citizen suit provision here, 15 U.S.C. § 1681n allows "any consumer" to sue for civil damages, the court finds without addressing the merits of the claim that Plaintiffs are arguably within the zone of interests to be protected by the statute in question. Prudential standing is therefore satisfied. *See Bennett*, 520 U.S. at 165 (finding the "any person" language in a "private attorneys general" provision to expand standing to the full extend under Article III).

Whether Plaintiffs meet the requirements of Article III constitutional standing requires a more thorough analysis. In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992), the Supreme Court held that, to satisfy Article III's standing requirements, a plaintiff must show three elements:

> First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly ... trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

"This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102-04 (1998).

The only element at issue in this case is the requirement that Plaintiffs have suffered an injury in fact. Plaintiffs submit two arguments in support of their contention that they have suffered an injury in fact: (1) where "Congress both confers a right and provides an express remedy for its violation," the invasion of that legal right constitutes an injury in fact; and (2) the "increased risk of identity theft resulting from the offender's failure to truncate the credit card numbers" is itself an injury in fact. (Doc. #93 at 4). After thoroughly reviewing relevant case law, the court agrees with the first argument.[4]

An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560. The question presented in this case is whether a "legally protected interest" includes legal rights created by Congress. *Lujan* and its progeny leave little doubt that it does.

The Supreme Court has long held that "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring),[5] citing *Warth v. Seldin*, 422 U.S. 490, 500 (1975). To be sure, this power is not limitless; Congress is of course bound by the requirements of the

---

[4] Regarding the second argument, standing *may* be satisfied by an increase in the risk of future harm, but that future harm must be imminent. *See Lujan*, 504 U.S. at 564 n.2. The court need not speculate as to whether Defendants' actions have placed Plaintiffs in imminent risk of harm because the invasion of a legally protected right is sufficient to confer Plaintiffs' standing.

[5] Because a majority opinion in *Lujan* is made possible only by counting Justice Kennedy's concurrence, its consideration is important in interpreting the holding of *Lujan*.

Constitution. A purely procedural right, for example, is insufficient to create a legal interest for the purposes of standing analysis. *Summers v. Earth Island Institute*, 555 U.S. 488, 496 (2009). However, decades of case law have made clear that where Congress creates a substantive legal right, even a right that did not previously exist, that right constitutes a legally protected interest, the invasion of which creates an injury in fact. *Warth*, 422 U.S. at 500. For example, in *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205 (1972), two white residents of an apartment complex were accorded standing to challenge the owner's discrimination against black applications as violations of the Civil Rights Act of 1968 because the Court found that the statue creates a legally protected interest in ensuring fair housing. *Id*. at 209-11. Since *Lujan* was decided, the Court has reaffirmed that invasions of legal rights created by statute satisfy the requirement of "injury in fact." In *Federal Election Commission v. Akins*, 524 U.S. 11 (1998), the Supreme Court found that Congress could, by statute, create a right to information and that the denial of such a right to information was an injury sufficient to satisfy Article III. *Id*. at 20-21. Furthermore, importantly, the Eleventh Circuit has upheld this doctrine, noting in *United States v. Weiss*, 467 F.3d 1300 (11th Cir. 2006), that "it is true that 'Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute.'" *Id*. at 1311, citing *Linda R. S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973).

      This well-settled case law makes clear that a statutorily created right can give rise to a legally protected interest. In the instant case, the statutory provisions invoked by Plaintiffs, 15 U.S.C. §§ 1681c(g) and 1681n, create a substantive right to have one's financial information protected through truncation and also provide a procedural right to enforce that truncation. Having found that Plaintiffs have a legally protected interest, the court now turns to whether the invasion of that legally protected

interest in this case was (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Plaintiffs have alleged that their right to have their financial information protected was actually invaded when Defendants printed more than the last 5 digits of their credit and/or debit card numbers in violation of 15 U.S.C. § 1681c(g). (Doc. #24 at 8). Because the Amended Complaint states that the invasion has already occurred and that it happened specifically to Plaintiffs as opposed to consumers who had never transacted business with Defendants, Plaintiffs have shown that the invasion is concrete and particularized as well as actual. Therefore, Plaintiffs have demonstrated injury in fact. Causation is evident because Defendants' failure to truncate Plaintiffs' credit card information caused the invasion of Plaintiffs' legally protected interest in having their credit card information truncated. Finally, it is also likely that the injury will be redressed by a favorable decision as the statutory damages provided in 15 U.S.C. § 1681n provide a remedy.

Defendants raise two arguments against finding an injury in fact for violations of FACTA. First, Defendants argue that the invasion of a statutorily-created right alone is insufficient to confer standing and that the Eleventh Circuit requires a plaintiff to show actual damages in addition to a statutory right in order for the court to have jurisdiction. (Doc. #67 at 3). Second, Defendants contend that, even if the invasion of a statutorily-created right is sufficient to confer standing, Plaintiffs do not have a statutorily-created right under FACTA because, despite the plain language of the statute, Congress did not intend to give Plaintiffs a right to sue. (*Id.*).

Defendants' first argument is easily disposed. At the hearing on February 19, 2013, Defendants cited language in *Weiss* that states that "[a] federal court's jurisdiction . . . can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action,'" *Weiss*, 467 F.3d at 1311. Defendants suggested that this court interpret

8

the "actual injury" requirement in *Weiss* as an independent requirement that a plaintiff suffer some actual detriment. Such an interpretation, however, cannot be squared with Supreme Court precedent,[6] which has found Article III standing where no actual detriment existed. For example, in the seminal case declaring the line-item veto unconstitutional, *Clinton v. City of New York*, 524 U.S. 417, 424 (1998), the plaintiffs challenged a line item veto used by President Clinton to cancel a tax provision that would have benefitted sellers of shares in eligible farmers' cooperatives, but not purchasers of those stocks. The Court found the sellers had standing, even though they had not suffered any detriment from the line item veto (but rather had merely been denied a benefit). The Court also found that the purchasers had standing to challenge the line item veto as well, even though they would only be affected by the change in market conditions.[7] *Id.* at 429-31. In *International Primate Protection League v. Administrators of Tulane Educational Fund*, 500 U.S. 72 (1991), the Court found that the plaintiff, an animal rights advocacy group, had standing to challenge the removal of the case from Louisiana state court because it found the right to sue in the forum of one's choice to be a legally protected interest, even though it was unchallenged that the

---

[6] This logic also fails to comport with settled principles of Anglo-American law. The Supreme Court has clarified that by "limiting the judicial power to 'Cases' and 'Controversies,' Article III of the Constitution restricts it to the traditional role of Anglo-American courts." Interpreting injury in fact to require a plaintiff to show actual damage, however, restricts access to the courts in a manner inconsistent with the longstanding practices of our justice system. A property owner may sustain a cause of action for trespass regardless of whether the trespasser actually damaged the property in question. A contracting party may sue for breach of contract, even if the contracting party was not harmed by the breach of the contract. *Qui tam* actions allow private citizens to participate in and benefit from litigation over, for example, fraudulent practices, even where they have not been individually harmed, and the Supreme Court has found this practice consistent with the requirement of Article III. *See Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 777-78 (2000). In short, Defendants' theory of standing does not stand scrutiny.

[7] The Court's finding that standing existed for the purchasers is illuminating. While the tax credit would have directly benefitted *sellers* had it not been vetoed, the Court found that by giving sellers an incentive to sell shares, Congress also gave *buyers* bargaining power to facilitate the purchase of shares. Therefore, the Court found, "[b]y depriving them of their statutory bargaining chip, the cancellation inflicted a sufficient likelihood of economic injury to establish standing under our precedents." *Clinton*, 524 U.S. at 432.

plaintiff lacked standing in the underlying suit. *Id*. at 77. Such cases buttress to the conclusion that the invasion of a legally protected interest alone is sufficient to constitute injury in fact.[8]

This court believes that a better reading of *Weiss* should take into account the sentence immediately following the passage cited by Defendants at the hearing. In that sentence, the Eleventh Circuit, while acknowledging that the law of standing can be confusing, noted that "the federal courts have consistently adhered to one major proposition without exception: *One who has not interest of his own at stake always lacks standing*." *Weiss*, 467 F.3d at 1311 (emphasis in original). The emphasis in *Weiss* is not about *what* injury must be shown, but about *who* may bring a claim. Indeed, in *Weiss* the Eleventh Circuit upheld a district court's determination that the appellant, a corporation wholly owned by a co-conspirator in a money laundering scheme, lacked standing to challenge the forfeiture of criminally-obtained property because it was the wrong plaintiff to sue for two reasons: (1) the corporation did not own any of the contested property; and (2) its interests had already been adequately represented by the right plaintiff, the corporation's owner. *Id.* at 1305. This interpretation of *Weiss* makes more sense because the ultimate question a court seeks to resolve when evaluating whether a plaintiff satisfies the requirements of Article III standing is not a judgment about what kinds of injuries merit judicial remedies, but rather a determination of whether a particular party is the right plaintiff to bring a claim. Article III standing asks whether a plaintiff has a particular grievance against the defendant that distinguishes that plaintiff from the public at

---

[8] The court notes that in a recent case initiated by consumers pursuant to 15 U.S.C. § 1681n(a) alleging violations of the Fair Credit Reporting Act, the Court noted that at least one plaintiff "claimed no actual harm" but did not consider whether that plaintiff lacked Article III standing. *Safeco Ins. Co. of America v. Burr*, 551 U.S. ___, 127 S. Ct. 2201, 2207 (2007). Although certainly not precedential, the Court's reference in *Burr* is at least worthy of observation.

large such that a case or controversy exists between the parties.[9]  One fact in this case easily distinguish Plaintiffs from the public at large: Plaintiffs transacted business with Defendants and Defendants' actions in the course of that transaction form the basis of this lawsuit.

Defendants' second argument raises thornier issues.  Defendants argue that Congress did not intend to give a right of action to consumers in Plaintiffs' situation and cites the preambulatory language of the 2008 Amendment to Section 1681n[10] as evidence that Congress did not intend to confer a cause of action to consumers who had not suffered any actual damages.  (Doc. #67 at 3).

Title 15 U.S.C. § 1681c(g) requires merchants to truncate credit card numbers and, until the 2008 Amendment, required merchants to truncate the expiration date as well.  The 2008 Amendment added subsection (d) to 15 U.S.C. § 1681n, which absolved merchants of liability for failing to truncate the *expiration date* so long as the other requirements of 15 U.S.C. 1681c(g) are met.  The preambulatory language of the 2008 Amendment makes clear that Congress was concerned about the wave of litigation filed by plaintiffs who had not alleged any actual harm, but were awarded civil damages on the basis that the merchants failed to truncate the expiration dates on their credit cards.  Because Congress actually took action to constrain liability with regard to the truncation of expiration dates, it is clear that Congress could also have barred the award of statutory damages for the failure to truncate credit card numbers where there was no allegation and/or proof of actual

---

[9] *See Bond v. U.S.*, 131 S.Ct. 2355, 2364-65 (2011) (distinguishing an ordinary citizen's interest in adherence to the constitution and a situation where "[a]n individual has a direct interest in objecting to laws that upset the constitutional balance between the National Government and the States"); *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009) (standing "requires federal courts to satisfy themselves that the plaintiff has alleged such a personal state in the outcome of the controversy as to warrant *his* invocation of federal-court jurisdiction) (emphasis in original) (internal citations omitted); *Federal Election Commission v. Akins*, 524 U.S. 11, 23 (1998) (elaborating on the distinction between legal rights that accrue to specific individuals as opposed to the common concern for obedience to the law); *Warth v. Seldin*, 422 U.S. 490, 498 (1975) ("In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a "case or controversy" between himself and the defendant...").

[10] Pub. L. No. 110-241 (2008).

damages.

Congress did not do so. Rather, it removed liability for the failure to truncate expiration dates, but left the rest of the statute intact with regard to the truncation of credit card numbers. While the preamble to the 2008 Amendment does suggest that some merchants may have misunderstood the truncation requirement in § 1681c(g), the Amendment did not alter that section. Instead, it added § 1681n(d), which provides that:

> For the purposes of this section, *any person who printed an expiration date on any receipt* provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and June 3, 2008, *but otherwise complied* with the requirements of section 1681c(g) of this title for such receipt shall not be in willful noncompliance with section 1681c(g) of this title by reason of printing such *expiration date* on the receipt.

15 U.S.C. § 1681n(d) (emphasis added). The plain language of the Amendment clearly does not absolve merchants of liability for the failure to truncate credit card numbers. 15 U.S.C. § 1681n(d). While Defendants (and others) may disagree with the wisdom of the statute, its text is clear. If the meaning of a statute is clear on its face, a court may only look to legislative history if that plain meaning produces "a result that is not just unwise but is clearly absurd." *United States v. Maung*, 267 F. 3d 1113, 1121 (11th Cir. 2001). To judicially insert additional exemptions into the statute based on hunches about what Congress would (or should) have done, or may eventually do, requires the court to engage in a game of legislative reconstruction. The court declines that invitation.

Finally, the court notes that the few district courts that have addressed this FACTA standing question have uniformly determined that such plaintiffs have standing. *See, e.g.*, *Ramirez v. Midwest Airlines, Inc.*, 537 F. Supp. 2d 1161, 1166-67 (D. Kan. 2008); *Korman v. Walking Co.*, 503 F. Supp. 2d 755, 759 (E.D. Pa. 2007). The *Ramirez* court opined that finding standing in the face of such a

violation of FACTA in the absence of any actual monetary damages is the "unanimous view." *Ramirez*, 537 F. Supp. 2d at 1166-67. Furthermore, a majority (but not all) of district courts to have addressed the question have determined that a statutory violation of the Electronic Fund Transfer Act ("EFTA") confers standing. *Marbury v. Hometown Bank*, 2012 WL 3765020 (S.D. Tex. 2012) ("Even though Plaintiff received notice of the fee in one form-on the ATM screen—Plaintiff's alleged failure to receive notice in both statutorily mandated forms is an injury."); *Zabienski v. ONB Bank and Trust*, 2012 WL 3583020 (N.D. Ok. 2012) ("the plain language of the EFTA authorizes a plaintiff's recovery of statutory damages if successful on an EFTA claim ... even in the absence of actual damages."); *Campbell v. Hope Community Credit Union*, 2012 WL 423432 (W.D. Tenn. 2012) ("Plaintiff has standing by virtue of the alleged invasion of her statutory right to notice of the ATM fee pursuant to EFTA."); *Kinder v. Dearborn Federal Savings Bank*, 2011 WL 6371184 (E.D. Mich. 2011) ("the statute requires notice in two forms: on the machine and on the screen. Plaintiff's alleged failure to receive notice in the form required by the statute is an injury, notwithstanding the fact that she received notice in another form."); *In re Regions Bank ATM Fee Notice Litigation*, 2011 WL 4036691 (S.D. Miss. 2011) ("Plaintiffs allege that they did not receive notice by means of a sign affixed to the exterior of the machine-notice to which they were statutorily entitled. That is an injury.").

This is not to say that the court's conclusion here is right because it is the most "popular" one. Judicial decision-making is not driven by "counting the votes" of other courts. Rather, after carefully reviewing cases concerning Article III standing, the court is convinced that the consensus among

courts that a violation of FACTA absent actual damage is sufficient to confer standing is correct.[11]

## IV.   CONCLUSION

For the reasons discussed above, The Pantry's Renewed Motion To Dismiss for Lack of Standing (Doc. # 80) is due to be denied.

**DONE** and **ORDERED** this ___11th___ day of March, 2013.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

---

[11] The court has reached this determination based on decisions of the Supreme Court and the Eleventh Circuit in other contexts. However, the court is well aware that neither the Supreme Court nor the Eleventh Circuit have specifically addressed the question of whether a violation of FACTA by itself is sufficient to confer standing upon a consumer who transacted with the violator. Indeed, the Supreme Court previously granted certiorari on the related question of whether Article III standing could be satisfied by statutory violations of The Real Estate Settlement Procedures Act of 1974 ("RESPA") without actual damages, but later ruled that certiorari had been improvidently granted. *First American Financial Corp. v. Edwards*, 132 S. Ct. 2536, 2536 (2012). The court acknowledges that the Supreme Court and the Eleventh Circuit, if confronted with this precise question, could reach a different conclusion than this court. Although the few courts that have dealt with this issue in the FACTA context have all said standing exists, there have been instances where courts dealing with substantially-related issues in other contexts have found that standing does not exist. *See e.g. Chavert v. First National Bank of Wahoo*, 2012 WL 2016184 at *3 (D. Neb. June 4, 2012) (finding that standing requires more than a violation of the EFTA); *Hinterberger v. Catholic Health System*, 2012 WL 125270 (W.D.N.Y. Jan 17, 2012) (finding no standing for statutory damages under ERISA); *but see Financial Institutions Retirement Fund v. Office of Thrift Supervision*, 964 F.2d 142, 147 (2d Cir. 1992) ("The actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.").